IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

AARON ANDREW MERZ,

    Plaintiff,

v.                                      CASE NO. 1:20-cv-202-AW-GRJ

DR. KILOLO KIJAKAZI,

Acting Commissioner of Social Security[1],

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Social Security Disability Insurance Benefits (DIB). ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 15, 16, 22, 25. For the reasons explained below, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed a claim for DIB on May 22, 2017, alleging a disability onset date of June 29, 2016, due to bilateral shoulder injuries,

---

[1] In July 2021, Dr. Kilolo Kijakazi was appointed Acting Commissioner of Social Security. The **Clerk** must correct the docket accordingly.

neurocognitive impairment, depression, and chronic pain.  R. 173-74; 191.  Plaintiff's claims were denied initially and upon reconsideration.  A hearing was held before Administrative Law Judge Donna Lefebvre on July 19, 2019. R. 31-75.

On September 25, 2019, the ALJ found Plaintiff not disabled.  R. 16-26. The ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2021.  The ALJ found that Plaintiff had the severe impairments of traumatic brain injury, major depressive disorder, and degenerative joint disease of the bilateral shoulders.  R. 18.  The ALJ found that Plaintiff had non-severe impairments of essential hypertension, obesity, and status-post benign brain tumor removal.  *Id.*  Plaintiff's impairments, singly or in combination, did not meet or medically equal the Listings.  Regarding mental impairments, the ALJ found no more than moderate limitations under the Paragraph B criteria and that the Paragraph C criteria were not present.  *Id.* at 19-20.  The ALJ determined that Plaintiff had the residual functional capacity (RFC) for a reduced range of light work with exertional and postural limitations, a very quiet to moderate environment, no unprotected heights, and that he has the ability to understand, remember, and carry out simple instructions up to complex instructions (those that can be learned in a period of up to two years).

Plaintiff was further limited to no customer service interaction with the public, but could have frequent interaction with co-workers. *Id.* at 20-21. The ALJ found that Plaintiff could not return to his past relevant work as a tow truck driver or professional football player. Relying on the testimony of a vocational expert (VE), the ALJ found that there were other jobs in the national economy that Plaintiff could perform such as merchandise marker, routing clerk, and mail sorter. *Id.* at 24-25.

The Appeals Council denied review. *Id.* at 1-3. This appeal followed. Plaintiff asserts one issue for review, arguing that the ALJ's decision is not supported by substantial evidence because the ALJ "ignored" the opinion of Mark McDonough, Ph.D., who performed neuropsychological testing of Plaintiff. ECF No. 22 at 9.

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015). The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f).

Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

### III. SUMMARY OF THE RECORD

#### A. *Relevant Medical and Opinion Evidence*

Because Plaintiff's appeal focuses on the ALJ's treatment of the evidence pertaining to his neurocognitive and mental impairments, the Court's discussion focuses on those records. Plaintiff suffered concussions

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

> *Id.* (internal citations omitted).

causing traumatic brain injury (TBI) while he played college and professional football. *See* R. 574-91 (8/24/16 consultative report by Mark McDonough, Ph.D.). Additionally, Plaintiff had surgery to remove a benign brain tumor in 2010, and had residual effects due to fluid buildup. A few months after the surgery, a shunt was implanted to control the fluid. *Id*.

Dr. McDonough's comprehensive neuropsychological testing and December 2016 report were made in connection with Plaintiff's efforts to seek compensation from the NFL due to his TBI. *See* R. 574-91. Based on his testing, Dr. McDonough offered the following ICD 10 diagnostic criteria: G93.40 Encephalopathy (unspecified); F02.81 Dementia (classified elsewhere with behavioral disturbance); F07.89 Other personality and behavioral disorders due to serial concussive episodes; F34.1 and Dysthymic disorder. Dr. McDonough offered a rule-out diagnosis of G30.0 Alzheimer's disease with early onset, and noted a history of F11.21 Opioid dependence (in remission). R. 588. Dr. McDonough recommended brain imaging, psychotherapy to address Plaintiff's mood issues, psychotropic medication assessment and management to address mood issues, and further neuropsychological/psychological evaluation. R. 589.

Plaintiff received neurological care for his TBI and related symptoms. *See* R. 264-87 (Palm Beach Neurology progress notes, 2/27/17 to 5/1/17).

In August 2017, brain imaging revealed post-operative changes of the right frontal venticulostomy and suboccipital craniectomy, and moderate left maxillary sinusitis. R. 88-101. Plaintiff is prescribed Lyrica and Topamax for pain and headache symptoms stemming from his brain injury. R. 251.

Regarding his depressive disorder, Plaintiff's brain injury and history of substance abuse were identified as factors in his history of depression, anxiety, interpersonal difficulties, and suicidal ideation. R. 574-91. Plaintiff entered treatment for substance abuse in 2016 and began receiving consistent mental health care, resulting in improvement of his symptoms. He is prescribed mood stabilizing medication, including Wellbutrin and Cymbalta. R. 251.

In February and May 2017, Dr. Reed Stone, a neurologist, noted normal memory, attention/concentration, and neurological findings. R. 272-74, 268-69. In August 2017, Mark Todd, Ph.D., performed testing and noted "superior" reading recognition, above average expressive vocabulary, "high average to superior" processing, and "high average to superior" immediate and short term recall. R. 616-20. Dr. Todd concluded Plaintiff had "exceptionally mild" cognitive disorder with no diagnosis of dementia, but some limitations due to depression/mood disorder. R. 619-20. Dr. Todd reviewed the results of Dr. McDonough's testing, and

concluded that the testing reflected only mild cognitive inefficiency and cognitive slowing, and mild memory difficulties. R. 620.

An August 2017 psychological consult with Dr. Cynthia Alexander of the Cleveland Clinic noted slow motor behavior and depressed mood, but normal thought processes, good concentration, memory, and impulse control. R. 625-26. In September 2017, a consultative examination by William Beaty, Ph.D., also noted intact thought processes, normal attention/concentration, and normal memory. R. 572. Dr. Beaty diagnosed mild neurocognitive disorder due to TBI and polysubstance use disorder, in remission. R. 572. In November 2018, Dr. William Greene, M.D., at UF/Shands noted linear thought processes, intact memory, and adequate concentration/attention. R. 675-76.

In September and October 2017, SSA reviewers Lawrence Annis, Ph.D., and Jeffrey Prickett, Psy.D., reviewed Plaintiff's file. Both reviewers opined that Plaintiff could understand and remember simple instructions and most complex instructions, and that he is mentally able to sustain concentration and persist at a range of occupational tasks for at least two hours at a time. R. 82-83; 97-98.

*B. Hearing Testimony*

At the time of the hearing, Plaintiff was 35 years old, had a college degree in sociology, and was married. Plaintiff and his wife operate a non-profit foundation.[2] Plaintiff's role in the non-profit is primarily fundraising, social networking, and managing the website. R. 38-42.

Plaintiff testified that his current medications were benazepril (for hypertension), Lyrica, duloxetine, Wellbutrin, and topiramate (Topamax). He does not experience unpleasant side effects from the medication. Plaintiff testified that he experiences brief episodes of vertigo since his brain surgery. He experiences daily headaches that worsen with activity. R. 43-45.

Plaintiff was enrolled as a graduate student at UF, working toward a master's degree in education to become a school counselor. He testified that his professors accommodate him when he needs to leave class due to his symptoms, and he has educational accommodations in place through UF's disability resource center. R. 48-50, 59.

Plaintiff has experienced severe depression since 2010. He struggles with personal interactions and sometimes has difficulty controlling

---

[2] The non-profit is described elsewhere in the record as being located in Zambia, where Plaintiff and his wife previously worked for the Peace Corps. The couple traveled to Zambia on several occasions to develop the nonprofit, which provides educational scholarships to orphans. *See* R. 576.

his anger. Plaintiff admitted to a history of substance abuse, but had been sober for two and half years and attends AA meetings regularly. *Id.* at 52-55, 65.

Following his brain surgery, Plaintiff experiences fatigue on a daily basis and he has difficulty with his memory. Plaintiff's daily activities include helping to care for livestock, doing school work, working around the house, and helping with the non-profit. He testified that he has attempted multiple times to work, but his body doesn't hold up and his "mind breaks down." R. 56-66.

The VE testified that Plaintiff's prior jobs were performed at the medium and heavy exertional level. The ALJ posed a hypothetical to the VE that assumed an individual of the same age and education as Plaintiff with the RFC for light work with certain postural, exertional, mental, environmental, and social limitations, and the ability to understand, remember, and carry out from simple to complex instructions. The VE opined that such a person could not return to Plaintiff's past work, but that there were other occupations the person could perform within the stated limitations that exist in significant numbers in the national economy. The VE testified that a person who would miss work up to one day per week in a calendar month could not perform full-time work. R. 71-73.

## IV.  **DISCUSSION**

### A.  *ALJ's Evaluation of Dr. McDonough's Report*

Plaintiff argues that the ALJ "ignored" Dr. McDonough's opinions as expressed in his report.  Plaintiff contends that the report "clearly and unambiguously document[s] severe abnormality, which in turn provides the objective basis for the degree of limitations" alleged by Plaintiff.  Plaintiff asserts that the ALJ reversibly erred by failing to explain the weight given to McDonough's report and why his findings were discredited.  ECF No. 22 at 10-11.

In ruling on Plaintiff's application for benefits, the ALJ applied new Social Security regulations for evaluating medical evidence that became effective on March 27, 2017, before Plaintiff filed his application for DIB. *See* R. 22-23. The new regulations now specify five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. *See* 20 C.F.R. § 404.1513(a) (2020). Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. 20 C.F.R. § 404.1513(a)(2), (3) (2020); *see* 81 Fed.

Reg. at 62,562. For claims by adults on or after March 27, 2017, the regulations contain a more focused definition of medical opinion.[3] The regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. § 404.1520c (2020). The Commissioner chose not to retain the old "treating source rule" because healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion. *Id*. In evaluating claims filed on or after March 27, 2017, "the agency will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520(c)(a) (2020).

---

[3] A medical opinion is a statement from a medical source about what a claimant can still do despite impairment(s) and whether they have one or more impairment-related limitations or restrictions in the following abilities: (i) ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions such as reaching, handling, stooping, or crouching); (ii) ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting. 20 C.F.R. § 404.1513(a)(2) (2020).

Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). 20 C.F.R. § 404.1520(c)(b). Now, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, and (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020).  An ALJ must explain how he considered the factors of supportability[4] and consistency[5]. The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id.* The ALJ may but is not required to

---

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or a prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (2020).

[5] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2) (2020).

explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3).

Here, contrary to Plaintiff's claim, the ALJ applied the new rules to her analysis of the medical evidence and explained which opinions were persuasive and why. With respect to Dr. McDonough's report (which is the sole focus of Plaintiff's argument), the ALJ did not treat the report as a "medical opinion" because Dr. McDonough provided no "functional opinion" opining on what Plaintiff can still do despite his impairments and whether he has impairment-related limitations or restrictions in the physical or mental functional abilities described in the regulation. *See* R. 23; 20 C.F.R. § 404.1513(a)(2) (in the mental functional context, a "medical opinion" must address the Plaintiff's ability to perform work activities including understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting). Thus, Plaintiff has shown no error in the ALJ's consideration of Dr. McDonough's report as objective medical evidence, rather than as a "medical opinion", under the regulations. *See* 20 C.F.R. § 404.1513(a) (describing types of medical evidence).[6]

---

[6] Although Plaintiff does not refer to this evidence, the ALJ also discussed a treating source statement provided by Thomas Martucci, LCSW, dated October 25, 2017. Mr. Martucci opined that plaintiff has coherent thought, but fair concentration, full orientation, with depression and anxiety, normal appearance, with fair to good prognosis

The Court's review of the ALJ's analysis of the medical opinion evidence reflects that she applied the correct framework under the new rules. With respect to mental limitations, Agency reviewing physicians Lawrence Annis, Ph.D., and Jeffrey Prickett, Psy.D., opined that Plaintiff is limited to simple and most complex instructions, concentration for two-hour periods, limited interaction with the general public, and able to adapt to most changes on a sustained basis. The ALJ found these opinions "persuasive" as they are supported by the mental health records in Plaintiff's file and the restrictions accommodate Plaintiff's symptoms of depression and interpersonal difficulty, and also account for any cognitive delay resulting from Plaintiff's TBI. R. 23.

On this record, the ALJ's determination that Plaintiff's mental impairments are not disabling is supported by substantial evidence in the form of the persuasive opinion evidence and the medical records summarized above, which document findings consistent with the opinion evidence. Plaintiff has not shown that the ALJ erred in evaluating the evidence, or that the RFC determined by the ALJ will not account for the mental limitations that are supported in the record.

---

with ongoing treatment. He concluded that Plaintiff's ability to sustain work was "in doubt". R. 644-46. The ALJ found this statement "not persuasive" under the new rules, because a provider cannot provide opinions regarding a claimant's ability to work, as that determination is reserved for the Commissioner. R. 23.

## V. <u>RECOMMENDATION</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 4th day of November 2021.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.